Good morning. My name is Roy Haber, and I represent the plaintiff's appellants in this case. Yes, fine. We can hear you clearly. Oh, good. Thank you, Judge. Well, first, I just want to say that Lawrence Ross, who authored the amicus brief from the lawyers' committee, had intended to be here, but something came up and he was not able to do so. Parenthetically, I was counsel to the lawyers' committee in Mississippi in 1970 and have worked with them ever since, and I'd be happy to ask any questions that come from the brief that was submitted. Historically, the case, Jonathan Goldman, who's the named plaintiff, was and is the religious leader, padrino is the term that they use, of the Santo Daime Church. The Santo Daime Church is a very well-recognized church in Brazil and elsewhere, and they started a church here in the United States in Ashland, Oregon. They were bringing in the sacrament, which contained trace amounts of dimethyltryptophan, which is on the controlled substances list. They were arrested for bringing in the sacrament. And eventually, over a six-year period of attempting to get the Drug Enforcement Administration to understand that this was a religious freedom case, not a drug case, we went to trial and we prevailed. The government appealed the case, and it was clear that the Drug Enforcement Administration was not going to let this go away. They appealed it, and we, of course, were concerned about an appeal because it really, in major ways, is a case of first impression in that it's the first time that a Federal Court ever issued a permanent injunction against the Drug Enforcement Administration, the Attorney General, barring the government from enforcing the Controlled Substances Act when a substance on that list is being used in a religious context. The Drug Enforcement Administration never has and never will agree to that. After we won the case, we were very concerned about what would happen on appeal and engaged in a very in-depth process of lobbying to Attorney General Holder directly to reverse the Civil Division's appeal in the case. And I'll discuss that a little bit as we move on. Congress enacted the Civil Rights Attorneys' Fee Award Act because it was determined by the people of this country through their Congress that in order to make civil rights and constitutional rights effective for minority people, it was important, and it was crucial to have attorneys be representing them, credible, competent attorneys. And in order to do that, they passed the act which provided that prevailing parties would be entitled to receive attorneys' fees in these civil rights cases. In this case, both the district court as well as the government acknowledge that we, the plaintiffs in this case, were and remain the prevailing parties. Hensley v. Eckerhart states it well. Prevailing plaintiffs are entitled to all time reasonably expended in pursuit of the ultimate result in the same manner that an attorney traditionally is compensated by fee-paying clients. Counsel, let me jump in. Yes, please. I find the issue raised by this case to be fascinating. I think it's a very difficult issue. I'm certainly glad that you brought it to the court. But the first question I have is just trying to figure out, is your complaint that the district court committed some kind of a legal error? Both. Or because what you just said made me think that actually all we're reviewing for is an abuse of discretion because the court recognized that, sure, you guys are prevailing parties, and so I have to now figure out what's a reasonable fee in light of the results you obtained. And don't we just review for an abuse of discretion when a court says, you know, you're certainly entitled to fees for all the work you did in the district court before me, but, you know, the work you did on that appeal, it didn't actually end up furthering your victory in any way. In fact, the only thing that happened on appeal was that your victory got scaled back a little. It was an error of law that infected the way in which the district judge looked at the facts. So it's a mixed question. This Court certainly has a de novo to review attorneys' fees awards, and that's in our brief. And so the question is, what's the legal error then? That both the government and Judge Panner looked at this appeal in isolation and it came out with both the wrong issue of law and fact, and by that I mean, first of all, both of them talk about winning. Who won the appeal? That's a misnomer. There's a difference between the concept of winning an issue and the very specific term of art called prevailing parties. A prevailing party is the party that wins ultimately the case. And the government and district court acknowledge we're the prevailing parties. Where you have that, the court, the district court is not permitted to chop up every little piece and see who won this Rule 26 issue, who won this issue, and parse it. No. If you are the prevailing party, the case law also talks about the extent that you are the prevailing party.  I'm trying to get at what's the factor in the whole question of the amount of fees you're going to get. I'm sorry. So you're the prevailing party. Correct. Right. When you go about evaluating the extent or the amount of fees, you take into account the extent to which you prevail. In this case, when you look at the cases, the plaintiffs prevailed 100 percent in the row. You prevailed before the district court with a very significant judgment. Yes. Right? Yes. I mean, I have not quite seen a judgment quite as extensive, an injunction that was very detailed on what had to happen going forward. And so that was appealed, right? That's correct. And it looked like they were going to go after both the merits and the extent of the relief. And then there was all that lobbying that's part of this and trying to convince the government not to challenge the merits. Correct. Law and behold, the government, for whatever reason, it's not entirely clear, the government only challenges the scope or the extent of the injunction. Correct? Yes, but that does not affect the plaintiffs being prevailing parties. Now, in the end, you end up – that's correct. But it doesn't mean that you're automatically entitled to the amount of time, to be compensated for the amount of time that you expended in preparing your appellate brief. What it does depend the extent of that injunction. Your work on that and the result in that appeal did not really further the relief that you got. In fact, as Judge Watford said, it constricted – it pulled back the relief that you got. So it's hard to say. You know, I'm trying to figure – I think Judge Watford is absolutely correct. It's an interesting case. It's a different variation on all these attorney's fees, you know, ways in which you can look at how you evaluate attorney's fees. And this is a little bit different, a little bit unique. This is – And Judge Panner said in these circumstances, looking at the extent to which you prevailed, I don't think that you're entitled to attorney's fees. Why is that an abuse of discretion? Why is that there? Right. Number one, you asked – you posed the rhetorical question about if there is an appeal and you did all this work on the appeal, your term was not losing the appeal. Your term was maybe it wasn't a step. But the brief is very clear. But what you were trying to do was to preserve what gains you achieved before the district court and your belief that the relief was overextended with the injunction and you didn't want – you didn't want that provision to jeopardize the case. And so you worked out a deal with the government where the government was satisfied and there were modifications made to that injunction. That's what you're saying, isn't it? No. So you got – you – in the end, you achieved everything you set out to do. That's correct. All right. But it's hard for me to be perfectly honest, Judge, to follow that. But let me go on and say that your cases out of the Ninth Circuit are pretty clear. And I am concerned as I listen to this discussion about whether I got this point across both the Lawyers' Committee and in our private brief, and that is, in litigation – and I think it's valid that it says that if you don't litigate all the time, you may not understand that a loss is a win if you're not a litigator, because you go through all these things to get to the ultimate result. And, no, this appeal – first of all, to call the appeal a loss is a misnomer, because this Court is well aware and can take judicial notice virtually every school segregation, desegregation case, all the big prison cases. They all go up because the relief is extensive, and the court of appeals gives its view and often remands with instructions. That's all that happened here. It was a typical remand. Parenthetically, we did not participate in developing the original judgment. Judge Panner did that on his own. But at the appellate level, it was a remand. And we have a much better permanent injunction now. It's a clear, one-line injunction that says the attorney general may not interfere with importation, distribution, or use of this. I thought it was interesting that on remand, you proposed another pretty extensive injunction. No. What we did there was – When Judge Panner asked you to submit proposed orders. Because he was impressed with the agreement in the Junio de Vegetal case, which had a preliminary injunction, but then the civil division was able to convince the plaintiffs there to drop the case in exchange for an agreement. We were not about to drop the case. We have a permanent injunction. And that's what the issue is here. The issue is, am I, as a private lawyer, not entitled to defend a judgment? I mean, even if you look at any of these cases, they say if there's a district court judgment, you must defend it. And how would I have not defended it is another question that we could take a lot more time on. Gosh. Well, let me ask you a hypothetical that I guess has been bothering me about the plaintiffs to adopt here. And just tell me how you would come out on this. Let's say that you had represented a plaintiff in a civil rights action for damages only. And you won an award of compensatory damages. You won an award of punitive damages. Right? Let's say $100,000 in compensatory, a million in punitive damages. And the defendant only appealed the punitive damages award. And the result of the appeal was that the punitive damages award got wiped out. Right? So you go back down. You're still the prevailing party. You did preserve your compensatory damages award. You qualified for attorney's fees. But the district court says, but I'm not going to award you fees for the appeal because, you know, the victory you wound up with had nothing to do with anything you did on appeal. In fact, you kind of came out worse on appeal than you started out. Would that be an abuse of discretion in your view? Let me ask you a question because I want to make sure I follow you. Were you saying that punitive damages were originally awarded? Right, by the jury. And the defendant appealed the punitive damages. Only appealed the punitive damages award. And the appellate court said, no, those should not have been awarded. In the context of a damage case, I think it was Rivera was the decision. I think it's a completely different circumstance than this. Why? Because there you've got the amount of money at issue. And I guess you would argue that they weren't on the issue of punitive damages. They were not a prevailing party. They were a prevailing party on the other. Well, you're just – But here the – here First Amendment rights are at issue and you succeeded on that. If First – That's your argument. Are we again at a damage action or are we talking about injunctive relief, which is different? If we're talking about – I'm not talking – I'm talking about your case. In my case? Oh, if it was a First Amendment rather than a religious freedom restoration case? Well, I'm – go ahead. Religious freedom restoration case. I mean, you weren't looking for money. You were looking for client's rights. Injunctive. Yeah. Injunctive relief. And that's what we secured. Can you just come back to my question because I'm bothered by that and I'd like to hear your answer to it. So why is your case different from the hypothetical I just posed? In our case, we have a case for injunctive relief where there is a review of the breadth of the injunctive order. And there this Court remanded to the district judge to continue on with the litigation. It's just – I can't answer that analogy the way it's been put. This case on its own is one where we have a judgment that this Court determines went too far and sends it back. And are the plaintiff's lawyers not to be paid for defending that and going back in remand and getting a final permanent injunction? Members of the bar are entitled to do that. And this Court has clearly said it's the same for a civil rights attorney. If I can get a minute. I'll give you a minute for rebuttal, but we need to move on. May it please the Court. I am Matthew Collette from the U.S. Department of Justice on behalf of the government here. I think I'd like to start by addressing the notion that the plaintiffs actually are better off under the injunction. I don't think that's right. We raised one issue in our brief and we asked for exactly the order we got from the Ninth Circuit. In fact, if I could quote, we say in our conclusion of both of our briefs, the injunction entered by the district court should not be used. The end result was they still had their injunction in joining DEA for prohibiting them from using this particular enlisted drug. Yes. That's exactly what we asked the Court to do. We said vacate this injunction. Enter a new injunction limited to banning, prohibiting the outright prohibition of Dime. Right. Do not enter an injunction that enjoins the operation of DEA regulations. But they did prevail on that, and in order to reap the long-term benefits of that injunction or that belief that they obtained in the district court, they had to take a little detour up to the Ninth Circuit because the government filed an appeal. Yes. So what were they supposed to do? Just say, huh, government wins, we're not going to do anything. Hands, you know, we're just we the government's argument is just spot on. We're going to lose. Therefore, we shouldn't spend any time. We would prefer that every litigant do that when we appeal, Your Honor. But seriously, they did get over $1.1 million for obtaining the injunction. But they had to go. See, I don't think you can say that they should have done nothing. No. But I think it's key under Hensley that simply saying that it's reasonable to defend the appeal is not the standard. Now, Mr. Haber did say. Well, what should they have done then? Just sit back and the Justice Department took the appeal and not deal with that appeal? Is that what you're saying? No, Your Honor. You know, we did try to negotiate. It was who drafted that injunction to begin with, the one that was appealed? Judge Panner drafted the injunction. We moved the court. So the court drafted that injunction, which was very, very broad. And then the attorney general took an appeal and and the plaintiffs had to respond. And it came back and the plaintiffs got everything they wanted. Now, you expect them just to sit back and not defend that appeal that the attorney general brought? That's a little crazy. No, we don't, Your Honor. But that is not the standard under Hensley. The plaintiffs talk about the first part of Hensley, which says if you are the prevailing party, you get reasonable fees. And then Hensley goes on to say, and this Court has echoed this in Atkins v. Apfel, that does not end the inquiry. Then you have to talk about the results obtained. And that's what the district court did here. The injunction is still intact. We did not appeal that. The plaintiffs vigorously defended the application of the injunction to the DEA regulations in defending a 59E motion. And they filed a re-hearing petition after this Court's decision in our favor. This is a lot like Judge Watford's hypothetical, a lot like the Clark case. We cited Clark v. Los Angeles, which applies Hensley in our brief. In that case, you had an injunction. You had a $60,000 jury verdict in the plaintiff's favor. The defendants appealed, won on appeal. The jury verdict was vacated. Case goes back down. By then, the alleged harassment had stopped. The court, district court awards fees for the district court hours, but not for the appeal. And this Court said that is not an abuse of discretion based on the results obtained. They didn't say, well, was it reasonable to defend the victory? That's only part of the inquiry. It is not an abuse of discretion for the court to say, I'm looking at the results obtained here, and I am saying that the results, you didn't get the results you wanted here. And in that vein, I know there was, I think, a misstatement earlier about the plaintiffs working out a deal on remand. That didn't happen. We had a case. We won. We got just the injunction that we wanted. So just to take another run, I know you've done it in your brief, but take another run at distinguishing Cabrales. Why is that situation there different from ours? That seemed like the best case for the plaintiffs in some ways. Well, and I think you can legitimately say that a case like Cabrales is a step toward victory. In fact, in Cabrales, the court termed it a necessary step toward victory. Here we have a step back after the case is over. But what happened in Cabrales is you had a decision in favor of one party. A cert petition goes up, and it's what we call GVR. The court grants, vacates, and remands for reconsideration because of a new Supreme Court decision. It goes back to the court of appeals. The court of appeals says, we've looked at that decision. It doesn't change anything. We're reinstating our decision. In that case, this Court said, again, it didn't say you have to award fees. It said it's not an abuse of discretion in that circumstance to award fees because the quick step within the case in the interim is a necessary step toward victory. So let me ask you this. In this case, if on remand from our court, the district court had adopted the 17-page proposed, I can't remember the exact details, but the plaintiffs came back and said, okay, Your Honor, we're back from the Ninth Circuit. Here's our new proposed injunction. And the district court had adopted that. Then you would say it's like Cabrales because they had, you know, won some further victory on remand? Is that the idea? Yes. I think we would have probably appealed saying the court wasn't following this court's mandate, but had the court said, you know what, I think I'm going to continue litigating. The one thing that plaintiffs requested on remand was why don't you require the government to come in and prove a compelling interest for every regulation it would like to apply. And, you know, if somehow litigation had continued about that and a new injunction a year and a half later comes out of that, we have a different situation. Okay. So what's key in your mind is that the, I mean, tell me if I'm characterizing this right. You think that our case is different from Cabrales because basically the case ended in our court? That there wasn't any further win that they achieved on remand in the district court? Is that the difference? Well, I think that's a big part of it. That is, and quoting from Atkins v. Apple where this court said, a court does not have to award fees for time spent litigating the case after the last benefit won from the defendant. So you have that. There's no more benefits won. You could, if you litigated on a different issue, and why I'm hesitating, I think theoretically you could say you had this appeal in the middle of the case, kind of a separate appeal, and then you went back and there were other claims, other issues, sort of like that. But I do think Clark is very key here where they said, you know, it's clear that nothing associated with the appeal contributed to any favorable result achieved in this litigation. Favorable result achieved before this appeal. Well, it was a favorable result because they got the government off its back, you know. You took the appeal. You created all these extra expenses, and it ended up a deal was worked out. Wasn't a deal worked out? No, a deal was not worked out. We took the appeal and we won the appeal. If you kind of reverse what are the plaintiffs to do, what's the defendant to do? We have a decision that is way overbroad, in our opinion, and we appeal and we win that appeal. How did you win it? We won because this Court said that the injunction was overbroad to the extent that it enjoined DEA regulations that had not been litigated or found to violate RFRA. The Court gave us exactly what we wanted, which was an injunction limited to enjoining the outright prohibition of the T, which then allows DEA to exercise its enforcement discretion and enforce its regulations as it sees fit. That order by the trial judge, that was something that the trial court devised. The plaintiff didn't submit any proposed order. Maybe I'm wrong on that. But the judge did it. They felt that went up on appeal that there was a jeopardy here, so they went in and tried to work out a deal. And that's what finally happened. They got what they wanted. So they had total success. Well, with respect to that. You have this language here. In this case you just mentioned Cabrales. We hold instead that a plaintiff who unsuccessfully, at a stage of litigation, that was a necessary step to her ultimate victory is entitled to attorney's fees, even for the unsuccessful stage. Now that's been the law, as far as I know, in this circuit for a long, long time. And someone files a complaint in a civil rights action. And then they allege five causes of action. They don't make it on four, but they went on one. And on one they get all the benefits they're looking for. So you don't go in and chop it all up. They get their attorney's fees for the full amount of their claim. And you just say, well, you lost four out of five, so you only get 20%. Well, normally you don't. Normally you don't. I'm sorry. I'll wait. Well, go ahead. Tell me why you don't. Well, you don't chop it up if you're asking for four out of five things, and you get four out of five and achieve all the results you want. But the plaintiffs did not achieve all the results. That happens even if there is an appeal, and it comes back, and you defend the appeal. You can add that on. You can add that on to the attorney's fees. But as Clark and Oviatt and Stuart v. Gates make clear, if the plaintiff benefits nothing from the appeal, if it is not a necessary step toward victory, but, in fact, a step back after the case has already been won, it's not an abuse of discretion for the court. Then the government can go ahead, file an appeal, and drag things out and go on and on and on and exhaust the the plaintiff's expenses and increase them. And then the government says, well, OK, we did that. You're back to where you are. And well, you didn't have much to do about that. The court put it in. But anyway, we had to do that. You had to do what you had to do. So you're not going to get paid for defending an appeal that arose out of a matter that you didn't bring up in that detail. In the trial court, we took the appeal. Well, we have to win the appeal. I think it's not necessarily going to happen that the government is going to appeal for purposes of delay or to try to exhaust resources. If we bring an appeal that's not meritorious, we pay. And I think that's pretty clear. I do want to address one. So who created it? Who caused the appeal? The trial court did. That's what you're saying. I just have one procedural question. Where did Judge Panner get the idea for the extensive injunction that he crafted? I think he got them from the so-called UDV case. There was a preliminary injunction in that case. That case actually went all the way to the Supreme Court. It was called the O. Centro case. Yes. And that was a preliminary status quo injunction. The idea behind that was the court said we are working out some sort of way in which you can use this T pending the outcome of the case. So he looked at that and said, oh, I'll just start throwing in things from that preliminary injunction. We objected to that procedure. And the plaintiff said, no, you can still do that. And I don't think it's necessarily right to say, oh, what else could they have done? They filed a pre-hearing petition here vigorously saying that this court had eviscerated the district court's ability to enforce its injunction here and to enjoin DEA regulations. And on remand, they continued to make that argument. They didn't – certainly didn't have to do that. But the key again – But just to the extent or the amount of attorney's fees. I mean, you can go along and you can cut stuff or – Yes. And I think – but it was not an abuse of discretion for the court here. And the court did not do this as a matter of law or say they cannot possibly get fees. If you look at the court's decision, the heading is hours for the appeal. The court has recognized their prevailing parties. They got over a million dollars. I have one other procedural question, then we have to move on. But was there ever a motion filed in the Ninth Circuit for attorney's fees? No. We filed a bill of costs, and the plaintiff subjected to that. And the court ordered costs awarded to the government. So they just filed – when a mandate issue, they just filed the motion for attorney's fees in the district court? Yes. And I think that's not unusual, at least in our cases. And being an appellate lawyer, we generally prefer that they go back to the district court where our district court litigators can take over. But that is not unusual. I did want to say one more thing. I mean, I know there's this lobbying issue. And I think a couple things that Mr. Haber said I think indicate that he's talking about the wrong decisions. He talked about the DEA wasn't going to put up with this, and that he wanted to get the civil division's decision to appeal reversed. The DEA doesn't have the call here. The civil division doesn't make the decision whether and what to appeal. By regulation, that's the Solicitor General of the United States. And, in fact, all he has cited up to this point is a notice of appeal and a docketing statement. I would point out that the United States Attorney's Manual requires the filing of a protective notice of appeal, requires government attorneys to preserve the rights of the government pending a decision by the Solicitor General. It's jumping to conclusions to say that former Solicitor General Kagan made a decision and then reversed herself on this. And no court, as far as this catalyst theory, has opened up the government's or any government's decision to appeal. I think it's dangerous to say that in order to rebut this allegation, we have to waive our attorney-client privilege, waive our work product, in any event.    Thank you. We have one minute. All right. We're cramped for time. First of all, with regard to Clark. Clark said very clearly that it's because they dropped the case, they had gotten everything they wanted. Had they gone back to trial and won, they would have gotten fees for that. So that's clear. With regard to the Atkins decision, what you're not told is Atkins held that, for example, if the government appealed the case and the plaintiff was required to defend a district court victory, the plaintiff, of course, would be entitled to fees for the appeal. If the plaintiff won on the appeal. That's what that footnote is saying, right? No. Of course they would be entitled to the fees for the appeal. It doesn't require that you win the appeal in order to get fees. It's part of the case. If you lost the appeal in that context in which that statement was made, you wouldn't be the prevailing party anymore because you would have lost the whole case. That's what that. Different. I think that's what the Court was talking about in that passage you just read. I don't read it the way you do. No, I don't agree with you on that. I think we see that maybe differently. We're saying that this is an exception where if you have to defend, it's different than if we filed an appeal and we were asking for more and we didn't get it, no fee for that time. This is different. We're the prevailing party. We are forced to defend the appeal. And, of course, fees should be awarded for defending it, regardless of the outcome. And the outcome wasn't a loss. The outcome was a remand. The ---- with regard to ---- Okay. Last point. Make it quick. I think what happened here is Judge Panner, as a matter of law, is wrong because he must, under the case, he must state the underlying reasons why he denied the fee. And we believe what happened is he felt a million, 200,000 was enough. And they argued that in their brief. But Judge Panner doesn't say that. If that's what he believed, he had to say it. He didn't say why. And that requires reversal. We don't think a remand is necessary here. The government had an opportunity to respond by filing affidavits or declarations, which this Court requires for attorneys' fees. Instead of declarations, their lawyer says we didn't do this, we didn't do it. The solicitor general, of course, has the discretion. Why did he do it? Why did he change his mind? If the government chooses not to provide declarations, they had their chance. All right. Thank you.
judges: Pregerson, Paez, Watford